United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 26, 2007**

Charles R. Fulbruge III
Clerk

I n the
# United States Court of Appeals
## for the Fifth Circuit

m 05-70051

TONY ROACH,

Petitioner-Appellant,

VERSUS

NATHANIEL QUARTERMAN,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas
m 2:02-CV-0042

Before SMITH, GARZA, and PRADO,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Tony Roach was convicted of capital murder and sentenced to death. The district court denied habeas corpus relief and declined to issue a certificate of appealability ("COA"). Roach petitions this court for a COA on ten

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited cir- (continued...)

---

[*](...continued)
cumstances set forth in 5TH CIR. R. 47.5.4.

issues. We deny a COA.

## I.

In June 1998 firefighters found the body of Ronnie "Kitten" Hewitt inside her burning apartment in Amarillo, Texas. Though the fire burned her body, it was determined that she died from asphyxiation from being choked by a belt found tightened around her neck; she likely had been sexually assaulted; and someone set fire to her house using aerosol hair spray.

Later that month, police officers in Oklahoma questioned Roach about an unrelated crime, and during the questioning Roach confessed to killing a woman named Kitten in Amarillo. He signed a written confession in which he stated that he entered Hewitt's apartment through a window, confronted her, and choked her with his arm and then with a belt until she died. Then, he raped her vaginally and anally and took money, a knife, a beer, and some rings. Finally, he described using hair spray to set the apartment on fire.

A knife identified as Hewitt's and two of her rings were retrieved from pawn shops in Amarillo and in Guymon, Oklahoma, along with pawn slips signed by Roach. Semen was present in vaginal and anal swabs. Roach was excluded as the contributor of the vaginal swab, but the DNA profile of the contributor of the semen found in the anal swab matched his DNA in ten different areas; such a profile would occur in only one in six billion Caucasians, Blacks, or Hispanics.

A jury convicted Roach of capital murder, and he was sentenced to death. The Texas Court of Criminal Appeals affirmed. In response to a state application for writ of habeas corpus, a state trial court entered findings of fact and conclusions of law, recommending denial of relief; the Court of Criminal Appeals denied relief based on the trial court's findings and its own review.

## II.

Roach's application for COA was filed pursuant to 28 U.S.C. § 2253 (1996), which "permits the issuance of a COA only where a petitioner has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). For that requisite showing, a petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)). We conduct only a threshold inquiry into the merits of Roach's claims, not a full consideration of the factual and legal basis of those claims. *Id.* Because Roach was sentenced to death, "any doubts as to whether a COA should issue must be resolved in [his] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

The federal district court is required to defer to the state court's adjudication of questions of law and mixed questions of law and fact unless the court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Also, the district court must defer to the state court's factual findings unless they "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In the district court, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Roach requests a COA on ten issues. We address each in turn.

## A.

Roach contends that his execution would constitute punishment on the basis of the nature of the offense alone with no consideration of his character, in violation of *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). In *Woodson* the Court struck down a statute that mandated an automatic death sentence for those convicted of first-degree murder, because the statute failed to require a consideration of the defendant's character and record and the circumstances of the offense. *Id.* at 303-04.

The district court noted that Texas's death penalty laws differ from those in *Woodson*. The jury was required to consider all the evidence presented at Roach's trial, including the evidence on the issues *Woodson* mentions SSthe circumstances of the offense and the defendant's background and character. Moreover, the jury was required to consider the probability Roach would commit future acts of violence.

No reasonable jurists could debate the district court's conclusion that the jurors in Roach's case considered the evidence required by *Woodson*. Texas does not have an automatic sentencing provision like the provision in *Woodson*, and jurors were required to consider the evidence *Woodson* requires.

## B.

Roach posits that his execution under Texas's capital clemency procedures would violate his Eighth and Fourteenth Amendment rights. The procedure is deficient, he asserts, because the Texas Governor and Board of Pardons and Paroles seriously consider only actual innocence for commutation of a death sentence.

Roach argues, citing *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998), that the Supreme Court has held that minimal due process safeguards apply to clemency proceedings. *Woodard* suggests, he points out, that judicial intervention might be "warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id.* at 289 (O'Connor, J., concurring).

Texas's clemency procedure is defective, Roach contends, because only actual innocence is seriously considered, so inmates do not have meaningful clemency review. Texas has granted clemency only based on judicial expediency and never based on an inmate's request.

The district court deferred to the state court's conclusion that Texas's clemency procedures do not violate the Eighth or Fourteenth Amendments, holding that Roach merely pointed out aspects of the clemency process with which he disagreedSShe did not provide evidence that he would be denied access to the

process or evidence that the decision will be made arbitrarily. Futher, the district court pointed out, we have held that Texas's clemency procedures do not violate due process.[1] The Texas clemency procedures, the *Faulder* court concluded, do not resemble flipping a coin. *Id.* at 344.

Given *Woodard*'s description of the characteristics of the sort of arbitrary clemency procedure that would require judicial intervention, and in light of *Faulder*, no reasonable jurist could debate whether the district court erred in deferring to the state court.

C.

Roach urges that Texas's clemency process violates the International Covenant on Civil and Political Rights ("ICCPR"), which the United States ratified in 1992. He contends that Texas lacks a meaningful clemency process as required by the sixth article of the ICCPR. Also, he suggests execution without a meaningful clemency process violates customary international law.

The district court found that when the Senate ratified the ICCPR, it stated that articles one through twenty-seven were not self-executing, so Congress must incorporate those provisions into domestic law to make the covenant effective. Because Congress has not done so, the ICCPR is not binding law, and Roach's appeal to its provisions fails.

Along with the First and Sixth Circuits, we have previously concluded that ICCPR was not U.S. law because it is not self-executing

and because and Congress has not incorporated it into domestic law. *Beazley v. Johnson*, 242 F.3d 248, 267 (5th Cir. 2001).[2] Reasonable jurists could not debate the district court's conclusion that Roach has failed to establish that Texas's clemency process violates the ICCPR.

Because we have already established that reasonable jurists would not find Texas's clemency review defective, Roach's claim that execution without meaningful clemency/commutation review violates customary international law also fails for this same reason.

D.

Roach also argues that Texas's unstructured sentencing scheme is unconstitutional because it does not permit meaningful appellate review. Roach claims he has a right for appellate review of the legal and factual sufficiency of the jury's findings relating to Texas's mitigation special issue.

In response, the district court deferred to the state habeas court's determination that the Eight and Fourteenth Amendments do not require an appellate court to reweigh punishment evidence. Reasonable jurists could not debate this conclusion. As the district court pointed out, the Supreme Court has not stated that review of mitigation evidence is constitutionally required. In contrast, the Court has stated that juries may evaluate mitigation evidence[3] and

---

[1] *Faulder v. Tex. Bd. of Pardons & Paroles*, 178 F.3d 343, 344-45 (5th Cir. 1999) (stating that due process challenges to Texas's procedure were "meritless").

[2] *See also Buell v. Mitchell*, 274 F.3d 337, 371-72 (6th Cir. 2001); *Igartua de la Rosa v. United States*, 32 F.3d 8, 10 n.1 (1st Cir. 1994) (per curiam).

[3] *Tuilaepa v. California*, 512 U.S. 967, 974 (1994) ("[T]he States may adopt capital sentencing (continued...)

4

that appellate review of the proportionality of a death sentence is not required where a statute properly channels a sentencer's discretion.[4] Moreover, we have rejected challenges to Texas's appellate review of the special mitigation issue, holding it does not violate the Fourth or Eight Amendments[5] and that it does not violate due process.[6] In light of these precedents, no reasonable jurist could debate the district court's decision.

## E.

Roach avers that Texas's special issue relating to the future dangerousness of the defendant is unconstitutional because it requires only proof of a probability of future dangerousness and not proof beyond a reasonable doubt of future dangerousness, puts the burden of proof on the defendant, chilled Roach's ability to present relevant mitigating evidence, and insufficiently guides the jury in making its determination. First, contrary to Roach's contention, Texas's special issue does require proof beyond a reasonable doubt.[7] Roach's argument confuses proving the elements of an offense beyond a reasonable doubt, which is required by *In re Winship*, 397 U.S. 358 (1970), with the contents of the elements themselves. Because Texas's issue regarding future dangerousness must be proven beyond a reasonable doubt, reasonable jurists could not debate the district court's opinion.

We have already held that the burden of proof is not shifted to the defendant in Texas's special issue, *see Hughes v. Johnson*, 191 F.3d 607, 625-26 (5th Cir. 1999), so reasonable jurists would not debate Roach's objection on this ground. Similarly, we have held that a defendant's argument that Texas's special issue chilled the defendant's ability to present relevant mitigating evidence is meritless. *See Woods v. Johnson*, 75 F.3d 1017, 1033 (5th Cir. 1996). Finally, the district court recited the long line of our cases holding that the terms included in the punishment special issue are constitutionally sufficient.[8] None of Roach's objections to Texas's special issue would cause reasonable jurists to debate the district court's decision.

## F.

Roach asserts that Texas law violates the Eighth and Fourteenth Amendments because it prevents jurors from knowing that Roach would be sentenced to life if even one juror causes a deadlocked jury. The district court

---

[3](...continued) processes that rely upon the jury, in its sound discretion, to exercise wide discretion."); *Penry v. Lynaugh*, 492 U.S. 302, 326-27 (1989) (stating "there is no constitutional infirmity in a procedure that allows a jury to recommend mercy based on the mitigation evidence introduced by a defendant").

[4] *McCleskey v. Kemp*, 481 U.S. 279, 306-07 (1987); *Pulley v. Harris*, 465 U.S. 37, 50-51 (1984).

[5] *Hughes v. Johnson*, 191 F.3d 607, 621-23 (5th Cir. 1999).

[6] *Woods v. Cockrell*, 307 F.3d 353, 359-60 (5th Cir. 2002); *Moore v. Johnson*, 225 F.3d 495, 505-06 (5th Cir. 2002).

[7] TEX. CODE CRIM. PROC. art 37.071§(c) ("The state must prove each issue submitted under Subsection (b) of this article beyond a reasonable doubt . . . .").

[8] *See, e.g.*, *id.* at 1033-34 (listing cases holding that the terms in Texas's special issue do not need to be defined by jury instructions).

pointed out that we have previously rejected this argument as meritless. *See Alexander v. Johnson*, 211 F.3d 895, 897, n.5 (5th Cir. 2000). In *Alexander* we explained as follows:

> In addition to be being barred by *Teague*, Alexander's substantive argument is meritless. The Supreme Court recently rejected the theory that a district court's failure to instruct the jury as to the consequences of deadlock gives rise to an Eighth Amendment violation. *See Jones v. United States*, 527 U.S. 373 (1999). Furthermore, the Fifth Circuit has expressly rejected the contention that Texas's 10-12 Rule prevents jurors from considering mitigating circumstances. *See Jacobs v. Scott*, 31 F.3d 1319, 1328-29 (5th Cir.1994).

*Id.* at 897 n.5. Because we have previously rejected Roach's contention, no reasonable jurist could debate the district court's conclusion.

### G.

Roach claims that his right to have a jury consider all evidence relevant to mitigation of the death sentence was violated because the definition of mitigating circumstances limited the jury's consideration to evidence that might reduce Roach's culpability of the crime, excluding the potential for rehabilitation. The district court, citing to the trial transcript, noted that jurors were instructed to consider all evidence submitted to them in both phases of the trial and were told to consider mitigating evidence "to be evidence that a juror might regard as reducing the defendant's moral blameworthiness."

This definition encompasses "'virtually any mitigating evidence.'" *Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001) (quoting

*Graham v. Collins*, 506 U.S. 461, 476 (1993)). This jury instruction "does *not* unconstitutionally 'preclude[ ] [the jury] from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death'" *Id.* (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)). Roach's potential for rehabilitation falls within the evidence this jury instruction permits the jury to consider based on our caselaw; no reasonable jurists could debate the district court's decision to rely on this precedent.

### H.

Roach alleges that Texas's capital murder and death penalty statutes violate the Establishment Clause of the First Amendment because the statutes did not have a secular purpose, and the preeminent purpose of the statutes is religious. As evidence, he points to the primary sponsor's purely religious arguments in favor of the bill and the inability of the sponsors to articulate a reasonable secular purpose.

The district court, however, noted that the primary sponsor of the bill asserted religious arguments only in response to an opponent's religious arguments about the bill. The district court further noted that Roach presented evidence about the purpose of the bill only from the closing arguments for the bill. These few arguments, the district court reasoned, do not demonstrate the actual purpose of the bill.

No reasonable jurist could debate the conclusion that Roach has failed to show that Texas's death penalty statutes violate the First Amendment. Roach presents only evidence from a small part of the legislative process, and the evidence merely demonstrates the sponsor used a religious argument to refute an oppo-

nent's religious argument, not to state the purpose of the statute. Moreover, as Roach's brief highlights, the primary sponsor invited prosecutors to testify about the effect of the death penalty on deterrence and incapacitation. That testimony stated secular purposes for the death penalty.

"While the Court is normally deferential to a State's articulation of a secular purpose, it is required that the statement of such purpose be sincere and not a sham." *Edwards v. Aguillard*, 482 U.S. 578, 586-87 (1987). Here, where secular reasons for the statute were provided and no evidence demonstrates a religious purpose, no reasonable jurists could debate the district court's conclusion that Texas's death penalty statutes do not offend the First Amendment.

I.

Roach claims he was unconstitutionally deprived of his right to testify in mitigation of his punishment. He informed his attorney he wanted to testify, Roach alleges, but his attorney told him he would not be called to testify.

The district court rejected this claim for two reasons. First, the state habeas court determined that Roach did not ever express a desire to testify and that his attorney informed him of his right to testify. Without evidence contradicting these fact findings, the district court deferred to the state court's finding. The state court had Roach's affidavit, asserting he informed his attorney of his desire to testify, as well as his attorney's affidavit, stating she informed him of his right to testify and that he never told her he wanted to do so. From this evidence, the state court made its factual finding.

Second, the district court reasoned that

Roach has not demonstrated that his attorney's failure to allow him to testify constituted ineffective assistance of counsel, because Roach failed to prove he was prejudiced as required by *Strickland v. Washington*, 466 U.S. 668 (1984). We have previously held that a defendant failed to meet *Washington*'s prejudice standard, despite the fact his attorney prevented him from testifying against his wishes, because there was no reasonable probability that the defendant would not have received the death penalty if he had testified. *See United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2001). Because of the defendant's extensive criminal history and drug use, about which the government could cross-examine him, there was no reasonable probability that the jury would believe the defendant's testimony instead of the arresting officers'. *Id.* Here, the district court reasoned, that there was no reasonable probability that Roach's testimony would alter the outcome because of Roach's criminal history, which included a prior murder and the brutal nature of this crime.

No reasonable jurists could debate that the district court erred in deferring to the state habeas court's findingSSRoach presented no evidence that the state court's determination was unreasonable. Also, even if the district court accepted Roach's account, no reasonable jurist could debate the conclusion that Roach's testimony would have altered the outcome, given our analogous reasoning in *Mullins* and Roach's criminal history and particular crime in this case.

J.

Roach argues that because of a conflict of interest, he received ineffective assistance of counsel, violating his Sixth and Fourteenth Amendment rights. He states that his attorney accepted employment with the prosecutor's

office that was prosecuting Roach while she was still representing Roach on direct appeal.

Roach's attorney accepted employment with the prosecutor's office beginning January 1, 2000, but she filed a brief on Roach's behalf on February 2, 2000. In an affidavit to the state habeas court, she explained that she completed Roach's brief before going to work at the prosecutor's office but merely *filed* the brief after starting work there.[9] The affidavit also explained that the lawyer did not perform any work in the prosecutor's office related to Roach and did not communicate any confidential material to the prosecutor's office. Another attorney began representing Roach and filed a supplemental brief on his behalf with the Court of Criminal Appeals in May 2000, raising three additional points of error.

The district court found that the state habeas court's conclusions—that no actual conflict of interest existed[10] and that Roach did not prove he suffered harm—not to be an unreasonable application of federal law. We do not address whether an actual conflict existed, because reasonable jurists could not debate the conclusion that Roach failed to prove harm.[11]

Roach fails to point to any adverse effects of the alleged conflict, such as points of error that should have been argued or additional arguments that were omitted from the points of error raised. He contends his attorney devoted less time to his brief than she could otherwise have devoted, but he fails to suggest any harm from this lack of time. We require a petitioner to show "some plausible defense strategy or tactic might have been pursued but was not, because of the conflict of interest."[12] Without any showing of harm, reasonable jurists could not debate the district court's conclusion that Roach has failed to establish this ineffective assistance of counsel claim.

The request for COA is DENIED.

---

[9] The certificate of service on the brief states the brief was completed December 31, 1999.

[10] *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) requires proof of an actual conflict of interest, not merely a potential conflict.

[11] Cases in which "it is alleged that the attorney's representation was affected by his own self-interest are evaluated under the more relaxed *Strickland [v. Washington]* standard," not the *Cuyler* standard that the district court applied here. *Moreland v. Scott*, 175 F.3d 347, 349 (5th Cir. 1999) (citing *Strickland v. Washington*, 466 U.S. (continued...)

[11](...continued)
668, 694 (1984), and *Beets v. Scott*, 65 F.3d 1258, 1271-72 (5th Cir.1995) (en banc)). Though the district court analyzed the harm of Roach's attorney's conflict under *Cuyler*'s requirement that the conflict adversely affected his lawyer's performance, *Washington*'s requirement that the conflict prejudiced Roach's defense is more onerous than *Cuyler*'s requirement. Because Roach failed under *Cuyler*'s standard, he also fails under *Washington*'s more exacting standard. Thus, though the district court erred in applying *Cuyler* instead of *Washington*, Roach's argument is unavailing.

[12] *Hernandez v. Johnson*, 108 F.3d 554, 560 (5th Cir. 1997) (quoting *Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir.1996)).