# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 29, 2012

Lyle W. Cayce
Clerk

No. 11-70021

JAMIE BRUCE MCCOSKEY

Petitioner–Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-cv-00123

Before KING, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

Jamie Bruce McCoskey was convicted of capital murder and sentenced to death. The Texas Court of Criminal Appeals affirmed his conviction and sentence on direct appeal, and McCoskey unsuccessfully sought state post-conviction relief. McCoskey then filed for federal habeas relief. The district court denied habeas relief, but granted a certificate of appealability pursuant to 28 U.S.C. § 2253 for two of his claims regarding the jury instructions delivered

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-70021

during the punishment phase of his trial. McCoskey now seeks habeas relief on these two claims, as well as an additional certificate of appealability to challenge the district court's denial of habeas relief on several other claims regarding the jury instructions. For the reasons stated below, we AFFIRM the district court's judgment denying his request for habeas relief and DENY his request for a certificate of appealability.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November of 1992, Jamie Bruce McCoskey was convicted of capital murder. At the penalty phase of his trial, the state trial court gave written instructions to the jury. *McCoskey v. Thaler*, No. H-10-0123, 2011 WL 2162176, at \*4 (S.D. Tex. May 31, 2011). The relevant portion of the instructions stated:

> You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background, record, emotional instability, intelligence or circumstances of the crime which you believe could make a death sentence inappropriate in this case. *If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, if any, and thereafter, give effect and consideration to them in assessing the defendant's personal moral culpability at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a [sic] affirmative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal moral culpability of the defendant, a [sic] affirmative finding should be given to that special issue under consideration.*

*Id.* (emphasis added). The trial court then delivered the following two statutory special issues to the jury:

2

No. 11-70021

SPECIAL ISSUE NO. 1

Is there a probability that the defendant, Jamie Bruce McCoskey, would commit criminal acts of violence that would constitute a continuing threat to society?

SPECIAL ISSUE NO. 2

Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, do you find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

You are instructed that the term "mitigating evidence" or "mitigating" circumstances means evidence that a juror might regard as reducing the defendant's moral blameworthiness.

The jury answered Special Issue No. 1 in the affirmative, and Special Issue No. 2 in the negative. *Id.* at *2.[1] The trial court sentenced McCoskey to death. *Id.*

On direct appeal, McCoskey raised, *inter alia*, a challenge against the punishment-phase jury instructions under *Penry v. Lynaugh*, 492 U.S. 302 (1989) (*Penry I*), claiming that they prevented the jury from giving effect to evidence that McCoskey would not be a future danger to society. The Texas Court of Criminal Appeals ("TCCA") found the instructions to be erroneous, but rejected McCoskey's argument. *McCoskey v. State*, No. 71,629 (Tex. Crim. App. May 22, 1996), at 29–30. The TCCA first observed that McCoskey's trial counsel had failed to object to this error during the trial itself, meaning that under Article 36.14 of Texas Criminal Code, the error must have been "so egregious and have created such harm that appellant was denied a fair and impartial

---

[1] McCoskey attempted to rebut the State's evidence regarding his future dangerousness with evidence that McCoskey suffered from mental illness that could be successfully treated in prison. *See McCoskey*, 2011 WL 2162176, at *5. McCoskey contends that this evidence showed that he would not pose a future danger, even if it did not reduce his culpability for the murder.

trial." *Id.* at 30 (citations omitted). The court then reasoned that whatever error existed was harmless:

> [H]ad the jury completely disregarded the instruction, then no harm would have resulted because the jury would have been ignoring exactly what the appellant says caused him harm. On the other hand, *had the jury followed the court's instruction to the letter . . . ,* then two possibilities could have occurred. Had the jury wanted to recommend a life sentence as opposed to death, it would have responded in the affirmative to <u>both</u> of the special issues, thus yielding appellant's desired result of a life sentence. But, if the jury had expressly wanted to recommend a death sentence, then under the court's instruction, it would have answered both of the questions "no," thus also resulting to appellant's benefit, albeit contrary to the jury's intention, in a life sentence. Hence, appellant would have suffered no harm.

*Id.* at 31 (emphases in original).

McCoskey proceeded to file for state post-conviction relief, raising among other claims, an ineffective assistance of counsel claim. *See Ex parte McCoskey*, No. WR-56,820-02 (Tex. Crim. App. Mar. 11, 2009). McCoskey argued that the failure of his trial counsel to object to the erroneous jury instructions constituted grounds for setting aside his death sentence under *Strickland v. Washington*, 466 U.S. 669 (1984). The state habeas court found that the TCCA had "essentially . . . rejected" this argument on direct appeal when it found the instructions to be harmless and, in the alternative, that the harmlessness of the instructions precluded the necessary showing of prejudice to establish ineffective assistance of counsel. On appeal, the TCCA also rejected McCoskey's arguments, adopting the reasoning of the state post-conviction court.

McCoskey then filed for federal habeas relief on several grounds, challenging the punishment-phase instructions and asserting ineffective assistance of his trial counsel. *McCoskey*, 2011 WL 2162176, at *4–8, *12. Relevant for this appeal, McCoskey challenged the punishment-phase jury instructions under *Penry I*. He claimed that the instructions prevented the jury

from giving effect to evidence that McCoskey would not be a future danger to society by telling the jury to weigh mitigating evidence "in assessing the defendant's personal moral culpability." McCoskey posited that this instruction might have led the jury to disregard mitigating evidence regarding his future dangerousness that did not also go towards his moral culpability. The district court rejected this argument, pointing to the instructions' broad definition of mitigating evidence. *Id.* at *6. The district court, however, noted that reasonable jurists might disagree as to "whether the instruction was confusing in a way that might have led the jury to believe it could only consider mitigating evidence that reduced McCoskey's moral culpability, regardless of whether it tended to show that he would not pose a future danger." *Id.* It thus granted a certificate of appealability ("COA") on this claim.[2]

The district court also granted McCoskey a COA on his ineffectiveness claim, itself an extension of his *Penry* claim. McCoskey argued that his trial counsel's failure to object to the flawed instructions fell below an objective standard of reasonableness and resulted in a reasonable probability that but for counsel's failure to object, McCoskey might not have received the death penalty. *Id.* at *11 (citing *Strickland*, 466 U.S. at 687). Emphasizing the Antiterrorism and Effective Death Penalty Act's ("AEDPA") deferential standard, the district court reiterated its conclusion that the TCCA's finding—that the instructions, while flawed, nonetheless did not prevent the jury from considering and giving effect to McCoskey's mitigating evidence—was reasonable. *Id.* at *12. However,

---

[2] McCoskey also made an argument similar to that he made before the TCCA—namely, that his death sentence violated the due process requirements of the Eighth and Fourteenth Amendments because the jury had answered the special instructions in a way that required imposition of a life sentence. The district court found the TCCA's determination that any error in the instructions was harmless to be a reasonable one under the deferential review established by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254. *McCoskey*, 2011 WL 2162176, at *4–5.

the district court again granted a COA, positing that reasonable jurists could disagree about its conclusion. *Id.*

The district court rejected the remainder of McCoskey's claims for habeas relief and granted no further COAs. *Id.* at *16. McCoskey now appeals the district court's denial of habeas relief on his *Penry* and ineffective assistance of counsel claims, and also seeks a certificate of appealability on four other issues related to the punishment-phase instructions. We first analyze the merits of McCoskey's interrelated *Penry* and ineffective assistance claims. We then turn to whether a COA should issue for any of the other claims he raises.

## II. HABEAS CLAIMS

### A.    Standard of Review

"In an appeal of the district court's denial of habeas relief, 'this court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standard of review that the district court applied to the state court decision.'" *Austin v. Cain*, 660 F.3d 880, 884 (5th Cir. 2011) (quoting *Jones v. Cain*, 600 F.3d 527, 535 (5th Cir. 2010)). McCoskey's appeal is governed by AEDPA, 28 U.S.C. § 2254. Under § 2254(d), a federal court may grant habeas corpus relief only if the state court's adjudication of his claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). To be clear, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*." *Williams v. Taylor*, 529 U.S. 362, 411 (2000) (emphasis added). "A state court's decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases . . . or if the state court decide[s] a case differently

than the United States Supreme Court previously decided a case on a set of nearly identical facts." *Jones*, 600 F.3d at 535 (citations and internal quotation marks omitted). Similarly, "[a] state court's decision involves an unreasonable application of clearly established federal law if the state court 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (quoting *Williams*, 529 U.S. at 407–08).

## B.     The *Penry* Issue

McCoskey's first argues that habeas relief is warranted because the jury instructions made "it . . . impossible for the jury to give any 'meaningful effect' to any evidence supporting a finding that Mr. McCoskey was a future danger." *McCoskey* Br. at 10–11. In other words, McCoskey contends that because "the charge provided the jury with no vehicle for expressing its 'reasoned moral response' to substantial evidence having significance only to Mr. McCoskey's propensity to commit crimes, the denial of habeas relief should be reversed." *Id.* at 14.

McCoskey's claim is governed by *Penry I* and its progeny. In *Penry I*, the Supreme Court held that habeas relief was appropriate because a juror presented with the Texas special issues could not have given effect to the full scope of the mitigating evidence regarding mental retardation and childhood abuse that had been presented by the petitioner at his sentencing phase. *Penry I*, 492 U.S. at 340. The *Penry I* Court held that "it is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to *consider and give effect to* that evidence in imposing sentence." *Penry I*, 492 U.S. at 319 (emphasis added). Only then would "'the sentence imposed at the penalty stage . . . reflect a reasoned moral response to the defendant's background, character, and crime.'" *Id.* (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring)).

No. 11-70021

In *Penry v. Johnson*, 532 U.S. 782 (2001) (*Penry II*), the Court had occasion to apply the principles of *Penry I* to a situation similar to the present case. In that case, the jury had "had to determine whether Penry acted deliberately when he killed [the victim]; whether there was a probability that Penry would be dangerous in the future; and whether Penry acted unreasonably in response to provocation." *Id.* at 789. The Court rejected a supplemental instruction[3] which created "'a reasonable likelihood that the jury . . . applied the challenged instruction in a way that prevent[ed] the consideration' of Penry's [mitigating evidence]." *Id.* at 800 (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). In arriving at this holding, the Court emphasized that "the key under *Penry I* is that the jury be able to 'consider and give effect to [a defendant's mitigating] evidence in imposing sentence.'" *Penry II*, 532 U.S. at 797 (quoting *Penry I*, 492 U.S. at 319) (alteration in original). Put differently, the special issues must be "broad enough to provide a vehicle t[o] allow[] the jury to express its reasoned moral response to the full mitigating impact of all the evidence." *Nelson v. Quarterman*, 472 F.3d 287, 300 (5th Cir. 2006) (en banc). Thus, the Court concluded, the TCCA's acceptance of these instructions was an unreasonable

---

[3] The instruction stated:

You are instructed that when you deliberate on the questions posed in the special issues, you are to consider mitigating circumstances, if any, supported by the evidence presented in both phases of the trial, whether presented by the state or the defendant. A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character and record or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, if any, and therefore, give effect and consideration to them in assessing the defendant's personal culpability at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence, as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the defendant, a negative finding should be given to one of the special issues.

*Id.* at 789–90 (emphasis added).

application of *Penry I*. *Penry II*, 532 U.S. at 803–04. But the Court observed that "[a] clearly drafted catchall instruction on mitigating evidence . . . might . . . compl[y] with *Penry I*." *Id.* at 803. The Court noted that even Penry's counsel "would have [had] a tough time" arguing that the amended Texas capital statute—under which McCoskey was sentenced—did not comply with *Penry I*. *Id.*

In the wake of *Penry I* and *II*, we have understood the proper inquiry to be "whether there is a reasonable likelihood that the special issues precluded the jury from giving full consideration and full effect to the defendant's mitigating evidence, including evidence that has mitigating relevance outside the scope of the special issues because it speaks to a defendant's moral culpability." *Nelson*, 472 F.3d at 303. The capacious definition of "mitigating evidence" employed in the Texas statute can "encompass[] 'virtually any mitigating evidence.'" *Roach v. Quarterman*, 220 F. App'x 270, 277 (5th Cir. 2007). This is because "[t]his jury instruction 'does not unconstitutionally 'preclude[ ] [the jury] from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Id.* at 277 (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)) (alterations in original).

McCoskey urges that his case is materially indistinguishable from *Penry II* because the erroneous instructions in his situation created "internal contradictions" between the instructions and the special issues that "imped[ed] a reasoned response to substantial evidence mitigating future dangerousness." *McCoskey* Reply Br. at 1–2 (citing *Penry II*, 532 U.S. at 797–800). However, McCoskey misapprehends the Court's holding in *Penry II*. The Court rejected the supplemental instructions in that case "[b]ecause Penry's mitigating evidence did not fit within the scope of the special issues, [so that] answering those issues in the manner prescribed on the verdict form necessarily meant ignoring the

command of the supplemental instruction." *Penry II*, 532 U.S. at 799. Given that the *Penry II* special issues covered only the deliberateness of the killing, future dangerousness, and whether Penry had acted unreasonably in response to provocation, *id.* at 789, the Court's concerns about contradiction and limitation were self-evident.

McCoskey's case is different. Here, there is no indication that the TCCA *unreasonably* applied *Penry II* to McCoskey's case. *Williams*, 529 U.S. at 411. The instructions made clear that mitigating evidence could "include, but is not limited to, any aspect of the defendant's character, background, record, emotional instability, intelligence or circumstances of the crime which you believe could make a death sentence inappropriate in this case." Likewise, Special Issue No. 2 instructed jurors to consider "all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant," in determining whether to assess the death penalty. Moreover, the instructions as a whole encompassed such a wide breadth of evidence as to encompass mitigating evidence dealing with moral blameworthiness, as well as mitigating evidence going towards future dangerousness. *Cf. United States v. Conner*, 537 F.3d 480, 486 (5th Cir. 2008) (reviewing jury instructions as a whole for error). In sum, the jurors in McCoskey's case were directly asked whether mitigation evidence, broadly defined, warranted a life sentence rather than death. Consequently, there is no indication that it was *unreasonable* for the TCCA to conclude that the jury was not prevented from considering and giving effect to the defendant's mitigating evidence. *See Penry II*, 532 U.S. at 797.

The deferential standard of review, as well as the recognized breadth of Texas's jury instructions, indicate that the district court was correct in determining that the TCCA did not unreasonably apply Supreme Court precedent in finding that McCoskey's jury instructions did not prevent the jury

from considering and giving effect to the mitigating evidence he presented. We therefore affirm the district court's denial of McCoskey's request for habeas relief on this ground.

## C.     The *Strickland* Issue

McCoskey also raises an ineffective assistance of counsel challenge based on his trial counsel's failure to object to the erroneous jury instructions. McCoskey's argument on this issue is essentially the same as in the previous issue. The State effectively concedes that trial counsel committed error, instead arguing that this claim is procedurally defaulted or, in the alternative, McCoskey cannot show that he was prejudiced by counsel's error. Under AEDPA, there is no need to reach procedural default if McCoskey cannot prevail on the merits of his ineffective assistance claim. *See* 28 U.S.C. § 2254(b)(2). Accordingly, we first examine the substance of his *Strickland* claim.

Ineffective assistance of counsel claims are governed by the standard laid out in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. The district court agreed with McCoskey that trial counsel's failure to object to the flawed jury instructions was deficient. *McCoskey*, 2011 WL 2162176, at *12. Our question, then, is whether the prejudice prong is met. "When a defendant challenges a death sentence . . . , the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Put differently, "[i]n assessing prejudice under *Strickland*,

the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 131 S. Ct. 770, 791–92 (2011) (citations and internal quotation marks omitted). Thus, *Strickland* demands that likelihood of a different result "must be substantial, not just conceivable." *Id.* at 792.

McCoskey's lack of success on his *Penry* claim precludes his ability to show prejudice for *Strickland* purposes. Given the high bar established by the intersection of *Strickland* and § 2254(d), the TCCA's conclusion that the jury was able to consider and give effect to the mitigating evidence that McCoskey presented was reasonable. Under the above standard, McCoskey would have to show that "there is [no] reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 787. McCoskey cannot do this. Even assuming that trial counsel's performance was deficient, McCoskey's inability to make out a viable *Penry* claim defeats his ability to show a "reasonable probability that . . . but for counsel's unprofessional errors, the result of the proceeding would have been different. . . .[,] sufficient[ly] to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Consequently, we deny McCoskey's request for habeas relief on this point and affirm the district court's decision. There is no need to reach the issue of procedural default.

**D.     Conclusion**

McCoskey has failed to show that the TCCA unreasonably applied federal law in adjudicating his *Penry* and *Strickland* claims. The district court correctly denied his request for habeas relief.

No. 11-70021

## III. CERTIFICATE OF APPEALABILITY

### A.    Standard of Review

In order to pursue any other habeas claims, McCoskey must first obtain a COA, which is a jurisdictional prerequisite to the panel's ability to review the district court's dismissal of a habeas petition and denial of relief. *See* 28 U.S.C. § 2254(c)(1)(A); *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). This adds a further layer of review to the analysis of McCoskey's claims. *See* 28 U.S.C. § 2253. The panel may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This does not require that McCoskey demonstrate success on the merits of his claims, as "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El*, 537 U.S. at 338. When the district court rejects a habeas claim on procedural grounds, a COA should issue if the petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478.

In assessing whether to grant a COA, the panel is restricted "to a threshold inquiry into the underlying merit of [McCoskey's] claims." *Miller-El*, 537 U.S. at 327. Put differently, the panel is constrained to conducting "an overview of the claims in [McCoskey's] habeas petition and a general assessment of their merits." *Id.* at 336. The panel should make "the determination of

13

No. 11-70021

whether a COA should issue . . . by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000). In capital cases, doubts as to whether a COA should issue should be resolved in the petitioner's favor. *Foster v. Quarterman*, 466 F.3d 359, 364–65 (5th Cir. 2006).

## B.    McCoskey's Four COA Requests

### 1. The Jury and the Instructions

McCoskey first seeks to persuade us that reasonable jurists might debate whether the jury's response to the special issues indicates that they followed the erroneous instructions and sought to deliver a life sentence to McCoskey. He argues, citing *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985), that jurors are presumed to follow the instructions given to them by courts.

McCoskey is right that there is a presumption that "'jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.'" *United States v. Olano*, 507 U.S. 725, 740 (1993) (quoting *Francis*, 471 U.S. at 324 n. 9). However, "[t]he rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Where there is good reason to believe that the presumption is unwarranted by the facts of a particular case, it does not apply. *Id.* The district court, drawing on the TCCA's reasoning, found McCoskey's situation to be such a case:

> In this case it is obvious that the jury did not follow the instruction. If it had, then the answers to the two special issues would have been the same—"yes" if the jury wished to impose a life sentence, or "no" if it did not. The fact that the jury answered one special issue "yes"

14

and the other "no" makes it clear that the jury did not follow the instruction, and that it answered the special issues in a direct and straightforward manner, i.e., it found that McCoskey posed a future danger to society and that the mitigating evidence did not warrant a life sentence.

*McCoskey*, 2011 WL 2162176, at \*5. This reasoning is clearer and more persuasive than what McCoskey offers. Given that at the COA stage, we ask only whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," this is sufficient to meet that threshold. *Miller–El*, 537 U.S. at 336 (citation and internal quotation marks omitted). Consequently, we reject McCoskey's request for a COA on this issue.

### 2. The Principle of Lenity

McCoskey next tries to reframe his previous argument in light of the principle of lenity. McCoskey draws on *Mills v. Maryland*, 486 U.S. 367 (1988), to posit that a death sentence must be vacated if a reviewing court "cannot conclude, with any degree of certainty, that the jury did not adopt petitioner's interpretation of the jury instruction." *Id.* at 377. McCoskey then reiterates his view that "the nullification instruction treated the special issues independently and allowed the jury to express a preference for a life sentence by answering *either* one of the special issues affirmatively."

The general principle for which *Mills* stands can be found just above the section McCoskey quotes:

With respect to findings of guilt on criminal charges, the Court consistently has followed the rule that the jury's verdict must be set aside if it could be supported on one ground but not on another, and the reviewing court was uncertain which of the two grounds was relied upon by the jury in reaching the verdict. . . . In reviewing death sentences, the Court has demanded even greater certainty that the jury's conclusions rested on proper grounds. . . . Unless we can rule out the substantial possibility that the jury may have

rested its verdict on the "improper" ground, we must remand for resentencing.

*Id.* at 376–77 (citations omitted). The Court announced this proposition in the context of a capital case involving a jury instruction form that left "a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Id.* at 384. Similar to the present case, the Court lacked "extrinsic evidence of what the jury in th[e] case actually thought," but concluded that there was a "substantial risk that the jury was misinformed." *Id.* at 381.

It is difficult to see a similar "substantial risk" of misinformation in McCoskey's case. As the district court observed, and the TCCA before it, there is a "straightforward" reading of the jury's responses: It ignored the instructions and elected to sentence McCoskey to death. *McCoskey*, 2011 WL 2162176, at *5. Moreover, McCoskey's preferred interpretation—that the jurors understood the instructions to mean that affirmative answer to either special issue would result in a life sentence for him—leaves open the question of why the jurors answered the future dangerousness special issue in the affirmative, but the life imprisonment special issue in the negative. Given the limited nature of the COA inquiry and the absence of any compelling arguments from McCoskey, there is no reason to allow this claim to proceed further. We deny McCoskey's request for a COA on this issue.

### 3. *Logical Consistency*

McCoskey's third claim for a COA is that the district court erred by inquiring into the "logic" or "consistency" of the jury's verdict. McCoskey's claim appears to be that the district court demanded that the jury's verdict be logically consistent in contravention of Supreme Court precedent to the contrary. This

No. 11-70021

claim, however, was not properly presented to the district court. McCoskey made no mention of this claim in his amended habeas petition. His first reference to this argument arose in his reply to the State's answer to his amended habeas petition. Indeed, the district court did not consider this claim in its opinion, perhaps because it did not appear in McCoskey's petition. Moreover, McCoskey did not seek, pursuant to Federal Rule of Civil Procedure 15, to amend his petition to include this argument as a new claim nor does he currently argue that the district court has somehow abused it discretion by failing to consider it. *See* FED. R. CIV. P. 15(a)(2); *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998). A contention not raised by a habeas petitioner in the district court cannot be considered for the first time on appeal from that court's denial of habeas relief. *See Goodrum v. Quarterman*, 547 F.3d 249, 259 n.49 (5th Cir. 2008); *see also United States v. Sangs*, 31 F. App'x 152, 2001 WL 1747884, at *1 (5th Cir. Dec. 11, 2001) (affirming, in § 2255 context, district court's refusal to consider issue raised for the first time in reply to government's answer to habeas petition).[4] Given the above analysis, we reject McCoskey's request as his claim was never presented to the district court.

*4. The Harmless Error Analysis*

Lastly, McCoskey appears to contest the district court's agreement with the TCCA that any jury instruction error was harmless. McCoskey argues that this conclusion "rests on the mistaken belief that the jury following the instruction could only answer the special issues in one of two ways, either both, Yes, or both, No. Since that is false, the harm analysis is false as well."

---

[4] To circumvent these problems, McCoskey contends that this argument is not actually a novel habeas claim, but instead merely shows that the district court's and the TCCA's rejection of his due process claim were debatable by reasonable jurists; that he is not making a new and unpresented claim, but fleshing out a preexisting one. McCoskey's opening brief, however, never seeks to connect this claim back to any due process arguments he offered before the district court. This belies his contention that this is a new twist on an old claim.

No. 11-70021

McCoskey's argument misstates the position of both the district court and the TCCA. McCoskey's position is that the jury instructions were flawed and this caused him harm in the form of his death sentence. However, if the jury simply disregarded the erroneous instructions, then there was no harm to McCoskey because the instructions played no role in sentencing. In contrast, if the jury did properly follow the erroneous instructions, as McCoskey argues, then even if it had intended to sentence McCoskey to death, it would have responded "no" to both special issues since the error in the instructions was to conflate both special issues and state that the jury should answer both in the affirmative to choose a life sentence for McCoskey. Accordingly, no harm resulted from the instructions to McCoskey. Since McCoskey has offered no rebuttal to this position, it is clear that reasonable jurists could not debate this conclusion.

## C.    Conclusion

McCoskey cannot meet the standard required for the issuance of a COA. Either reasonable jurists could not debate the general merits of the district court's conclusions or his claims were not properly preserved for appellate review. We deny his request for a COA on these other issues.

## IV. CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's judgment denying McCoskey's request for habeas relief, and DENY his request for another COA.